RECORD NO. 14-1955

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

BOBBY J. KINSER,

*Plaintiff-Appellant,*

v.

UNITED METHODIST AGENCY FOR THE RETARDED -
WESTERN NORTH CAROLINA, INC., d/b/a UMAR,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

**OPENING BRIEF OF APPELLANT
BOBBY J. KINSER**

Todd J. Combs
COMBS LAW, PLLC
Suite 206
108 Gateway Boulevard
Mooresville, North Carolina 28117
(704) 799-2662
todd@combslaw.org

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1955        Caption: Bobby J. Kinser v. United Methodist Agency for the Retarded

Pursuant to FRAP 26.1 and Local Rule 26.1,

Bobby J. Kinser
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                           ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Todd J. Combs                    Date:        9/24/14

Counsel for: Bobby J. Kinser

## CERTIFICATE OF SERVICE
****************************

I certify that on _____9/24/14_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

John D. Cole
Nexsen Pruet, PLLC
227 W. Trade Street, Suite 1550
Charlotte, NC 28202
jcole@nexsenpruet.com

s/Todd J. Combs                                    9/24/14
(signature)                                        (date)

TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ......................................................1

ISSUES PRESENTED FOR REVIEW ................................................1

STATEMENT OF THE CASE............................................................1

    A.     Relevant Facts ........................................................................1

         1.     Mr. Kinser Has a Long History of Satisfactory and Exemplary Work Performance .....................................1

    B.     Procedural History........................................................4

SUMMARY OF ARGUMENT ............................................................5

ARGUMENT .......................................................................................6

    A.     Standard of Review ................................................................6

    B.     The District Court's Order Granting Appellee's Motion to Strike Affidavits was in Error ...........................................7

         1.     CINDY POWELL'S DISCLOSURE OF IDENTITY ...............7

         2.     THE AFFIDAVIT OF CHRISTOPHER POWELL IS NOT A SHAM AFFIDAVIT....................................................12

         3.     THE COURT SHOULD NOT STRIKE THE PLAINTIFF'S AFFIDAVIT BECAUSE IT IS NOT A SHAM AFFIDAVIT .................................................................16

         4.     RULE 56 ARGUMENT (not addressed in district court Order dated August 15, 2014)...................................17

i

        A.     Facts Admissible In Evidence.......................................17

        B.     Foundation and/or Personal Knowledge ......................18

     5.     THE COURT SHOULD NOT STRIKE ANY REFERENCE TO JOHN WEATHERFORD'S DWI CHARGE (not addressed in district court Order dated August 15, 2014).....................................................20

C.    The District Court's Order Granting Summary Judgment with Respect to Appellant's Claims was in Error .......................................21

     1.     There are Triable Facts Showing UMAR Violated Mr. Kinser's Rights under The Title VII, ADEA and North Carolina law ...........................................................21

        a.     Employer practices.........................................21

CONCLUSION....................................................................................41

CERTIFICATE OF COMPLIANCE.......................................................42

CERTIFICATE OF FILING AND SERVICE .........................................43

## TABLE OF AUTHORITIES

### CASES

Page

*Akins v. Fulton County, Ga.*,
    2008 WL. 2130748 (11th Cir. May 22, 2008)...................................................13

*Allen v. Board of Public Education For Bibb County*,
    495 F.3d 1306 (11th Cir. 2007) ......................................................................14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................7, 30

*Brinkley v. Harbor Recreation Club*,
    180 F.3d 598 (4th Cir. 1999) ..........................................................................33

*Burns v. AAF-McQuay*,
    96 F.3d 728 (4th Cir. 1996) ............................................................................36

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................6, 30

*Cleveland v. Polroy Management Systems Corp.*,
    526 U.S. 795 (1999)......................................................................................14

*Concrete Pipe & Products Of Cal. v. Construction Laborers Pension Trust*
    *for S. Cal*,
    508 U.S. 602, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993) ..............................25

*Costa v. Desert Palace, Inc.*,
    299 F.3d 838 (9th Cir. 2002) ..................................................................22, 25

*Desert Palace, Inc. v. Costa*,
    539 U.S. 90, 123 S. Ct 2148, 156 L. Ed. 2d 84 (2003) ....................................30

*Dugan v. Albermarle County School Board*,
    293 F.3d 716 (4th Cir. 2002) ........................................................................31

*Equal Employment Opportunity Comm'n v. City of Greensboro,*
  No. 1:08CV785 (M.D.N.C. 2010) ...................................................................36

*Equal Employment Opportunity Comm'n v. Sears Roebuck & Co.*,
  243 F.3d 846 (4th Cir. 2001) ...............................................................40, 41

*Evans v. Tech Applications & Serv. Co.*,
  80 F.3d 957 (4th Cir. 1996) .............................................................31, 33, 34

*Farr v. St. Francis Hospital and Health Centers*,
  570 F.3d 829 (7th Cir. 2009) ...................................................................22, 23

*Florer v. Johnson-Bales*,
  2010 WL. 597170 (W.D.Wash. Feb. 17, 2010) ..............................................8

*Fox v. Alexander Cnty.*,
  1 P. 10 (W.D.N.C. 2010) ...............................................................31, 32, 33, 35

*Gore v. Indiana University*,
  416 F.3d 590 (7th Cir. 2005) ...........................................................................23

*Harding v. Gray*,
  F.3d 150 (D.C. Cir. 1993) ................................................................................23

*Hernandez-Loring v. University Metropolitana*,
  233 F.3d 49 (1st Cir.2000).................................................................................11

*Harding v. Gray,*
  9 F.3d 150, 153 (D.C. Cir. 1993) ...................................................................23

*Holtz v. Jefferson Smurfit Corp.*,
  408 F. Supp. 2d 193 (M.D.N.C. 2006) ........................................................37

*Hossack v. Floor Covering Associates Of Joliet, Inc.*,
  492 F.3d 853 (7th Cir. 2007) .........................................................................23

*Huang v. Gutierrez,*
  1010 WL. 93274 (D.Md. Jan. 5, 2010)...................................................31, 32

iv

*Inman v. Klockner Pentaplast of America, Inc.*,
   347 F. App'x 955 (4th Cir. 2009) ...................................................................39

*Jackson v. Consolidation Coal Co., McElroy Mine*,
   21 F.3d 422 (4th Cir. 1994) ...........................................................................14

*Jones v. Oklahoma City Public Sch.*,
   617 F.3d 1273 (10th Cir. 2010) .....................................................................36

*Kozlowski v. Hampton Sch. Bd.*,
   77 Fed. Appx. 133 (4th Cir. 2003) ................................................................36

*Lettieri v. Equant Inc.*,
   No. 05-1532 (4th Cir. 2007) ..........................................................................28

*Lips v. City of Hollywood*,
   2009 WL 3048895 (11th Cir. Sept. 25, 2009) .................................................9

*M&M Medical Supplies & Serv., Inc. v. Pleasant Valley Hospital, Inc.*,
   981 F.2d 160 (4th Cir.1992) ............................................................................6

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) .........................................................................................7

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .........................................................................................7

*McDonald v. Santa Fe Trail Transport Co.*,
   427 U.S. 273, 96 S. Ct. 2574, 49 L.E.2d 493 (1976) ....................................35

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 688 (1973)- ...............23, 30, 32, 38

*Mee Industries v. Dow Chemical Co.*,
   608 F.3d 1202 (11th Cir. 2010) .......................................................................9

*Merritt v. Old Dominion Freight Line, Inc.*,
   601 F.3d 289, 299 (4th Cir. 2010) ................................................................30

*Miles v. Dell, Inc.*,
    429 F.3d 480 (4th Cir. 2005) ...........................................................40

*Murry v. Jacobs Tech., Inc.,*
    (M.D.N.C. 2012) .....................................................................38, 40

*Peele v. Country Mutual Insurance Co.*,
    88 F.3d 319 (7th Cir. 2002) .......................................................37, 38

*Phelan v. City of Chicago*,
    347 F.3d 679 (7th Cir. 2003) ...........................................................23

*Reed v. Buckeye Fire Equip.*,
    241 F. App'x 917 (4th Cir. 2007) ....................................................39

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000).............................................................7, 28, 41

*Rivot-Sanchez v. Warner Chilcott Co.*,
    707 F. Supp. 2d 234 (D.P.R. 2010) ...............................................8, 11

*Romero v. Drummond Co.*,
    552 F.3d 1303 (11th Cir. 2008) .........................................................9

*Sharpe v. Global Sec. International*,
    766 F. Supp. 2d 1272 (S.D. Ala., 2011) .......................................9, 13

*Smith v. University of N.C.*,
    632 F.2d 316 (4th Cir. 1980) ...........................................................36

*Southern States Rack and Fixture, Incorporated v. Sherwin-Williams Company*,
    318 F.3d 592 (4th Cir. 2003) ...........................................................11

*Straughn v. Delta Air Lines, Inc.*,
    260 F.3d 23 (1st Cir. 2001)..............................................................33

*Tex. Department of Community Affairs v. Burdine*,
    450 U.S. 248 (1981).................................................................28, 38

*Troupe v. May Dep't Stores Co.*,
20 F.3d 734 (7th Cir. 1994) ............................................................ 23

*Tyler v. Re/Max Mountain States, Inc.*,
232 F.3d 808 (10th Cir. 2000) ....................................................... 41

*Walker v. THI of N.M. at Hobbs Ctr.*,
2010 WL. 552661 (D.N.M. Feb. 8, 2010) ........................................ 8

*Warch v. Ohio Casualty Insurance Co.*,
435 F.3d 510 (4th Cir. 2006) ..................................................... 38, 39

*Warren v. Fort Lincoln Cemetery, Inc.*,
No. 00-419, 2001 WL. 743199 (D. Md. June 26, 2011) ................. 33

*In re Winship*,
397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ................ 25

## STATUTES

28 U.S.C. § 1291 ........................................................................... 1
28 U.S.C. § 1331 ........................................................................... 1
28 U.S.C. § 1343 ........................................................................... 1
29 U.S.C. § 623(a)(1) ................................................................... 30
29 U.S.C. § 626(c)(1) ..................................................................... 1
42 U.S.C. § 1981 *et seq* ................................................................. 1
42 U.S.C. § 2000e-2(a) ............................................................ 21, 22
42 U.S.C. § 2000(e), *et seq* ............................................................ 1
Civil Rights Act of 1965, Title VII, § 701, 42 U.S.C. § 2000e-2(m) ...................... 22

## RULES

Fed. R. Civ. P. 26(a) ...................................................................... 9
Fed. R. Civ. P. 26(a)(1)(A) ........................................................... 10
Fed. R. Civ. P. 26(e)(1) .................................................................. 8
Fed. R. Civ. P. 30(b)(6) ................................................................. 35
Fed. R. Civ. P. 37(a) ..................................................................... 10
Fed. R. Civ. P. 37(c) ..................................................................... 10
Fed. R. Civ. P. 37(c)(1) ......................................................... 8, 9, 10
Fed. R. Civ. P. 56 ..................................................................... 8, 17

Fed. R. Civ. P. 56(c)........................................................................6
Fed. R. Civ. P. 56(e)(2)...................................................................8
Fed. R. Evid. 801(c).......................................................................17
Fed. R. Evid. 801(d)(1)..................................................................17
Fed. R. Evid. 801(d)(2)............................................................13, 17
Fed. R. Evid. 802...........................................................................17
Fed. R. Evid. 803(1).......................................................................17

## OTHER AUTHORITIES

Civil Rights Act of 1991, Pub. L. No. 102-166, § 107(a), 105 Stat. 1071
(1991)..........................................................................................22

## I.    Jurisdictional Statement

Subject matter jurisdiction in the district court was proper under 28 U.S.C §1331, 1343, 29 U.S.C. § 626 (c)(1), 626(e), and 42 U.S.C. Section 1981 *et seq.,* as this case presents a federal question arising under, *inter alia,* Title VII of the Civil Rights Act of 1964, as amended the Civil Rights Act of 1991, as now set forth in 42 U.S.C. Sections 2000(e), *et seq.* ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and North Carolina law.  The jurisdiction of the United States Court of Appeals for the Fourth Circuit is vested in and asserted under 28 U.S.C. 1291, as this appeal arises from a final judgment of the district court entered August 15, 2014 disposing of all Appellant's claims.  Mr. Kinser filed timely notice of his instant Appeal on September 11, 2014 (J.A. 803).

## II.    Issues Presented for Review

A. Did the district court err in granting Appellee's Motion for Summary Judgment?

B. Did the district court err in granting Appellee's Motion to Strike three (3) affidavits of Appellant?

## III.    Statement of the Case

A. **Relevant Facts**

1. Mr. Kinser Has a Long History of Satisfactory and Exemplary Work Performance.

1

Mr. Kinser began working for UMAR on or about May 1, 1991 as a ProgramCoordinator and progressed to Chief Operating Officer (J.A. 8). Mr. Kinser served as interim President from July, 2011 until October, 2011 when Ann Church ("Church") became President and Chief Executive Officer (J.A. 8).

Mr. Kinser has always performed satisfactory work (J.A. 9, 473, 829-835, 679-688). Mr. Kinser has received favorable evaluations, salary increases, bonuses, commendations, and awards throughout his career with UMAR in excess of twenty (20) years (J.A. 8, 375-470, 471, 829-835) . Mr. Kinsers' Performance Evaluations were always rated at or above UMAR's legitimate expectations throughout the parties history in excess of twenty (20) years (J.A. 829-835, 679-688).

In July 2011, Mr. Kinser held the position of interim President and received a $7000.00 raise less than nine (9) months before Mr. Kinser's termination on the recommendation of UMAR prior President Steve Sellers, UMAR board President Ed Embrogno presented Mr. Kinser the permanent monetary increase for his Performance (J.A. 829-835).

UMAR's types of separation under their Administrative Policy and Procedure are Layoff/Reduction in Force, Voluntary Termination and Disciplinary Procedures (J.A. 689-691, 829-835). Mr. Kinser was never given a written warning or notice and never presented any documentation concerning any alleged

2

unsatisfactory work performance (J.A. 260-262, 829-835, 679-688).  The first time

Mr. Kinser saw and became aware of UMAR's list of alleged performance based

issues against him was in documentation UMAR submitted to the EEOC months

after Mr. Kinser's EEOC charge dated April 11, 2012 (J.A. 829-835).  On March

7, 2012 Church stated to Mr. Kinser that she was building her team and did not see

Mr. Kinser as a part of it (J.A. 9).  At the time UMAR terminated Mr. Kinser's

employment, he was the only male member of UMAR's management/leadership

team (J.A. 9, 500-501, 275, 276, 335, 357, 358, 366, 371).  After Mr. Kinser's

termination, Church announced along with the leadership/management team in an

office administrative meeting that Mr. Kinser had resigned to pursue his own other

endeavors and that they were going to miss him and wish him the best of luck (J.A.

841, 260-262). After Mr. Kinser was terminated, Church, Christine Gibney, Beth

Bradley ("Bradley"), a female in her 20's hired in March 2012 and Aline Ferrari

("Ferrari"), a female in her late 20's hired in March 2012 performed the job duties

Mr. Kinser used to do (J.A. 477, 478, 256, 260, 447, 595, 596)..  Bradley's Job

duties and job functions which Mr. Kinser used to do include but are not limited to

social security administration for residents and auditing of residents funds (260-

262).  After Mr. Kinser's termination, all members of UMAR's leadership team

and the entire corporate staff of UMAR were females (J.A. 500, 501, 256-259, 275,

276, 335, 337, 358, 366, 371).

### B. <u>Procedural History</u>

Appellant Mr. Kinser initially brought suit in the U.S. District Court for the Western District of North Carolina, Charlotte Division against Appellee UMAR alleging violations of both federal and state law based on sex discrimination and age discrimination, under Title VII and ADEA as well as unlawful employment practices under North Carolina law. *See* Original Complaint (J.A. 7-13).

On May 3, 2013 Appellee filed its Answer to Complaint (J.A. 14-22). On June 18, 2013 Appellant served his Initial Discovery Disclosures on Appellee. On April 2, 2014 Appellee filed its Motion for Summary Judgment (J.A. 181-183, 804-810). Appellant filed a timely response on May 16, 2014 (J.A. 234-236, 237-255). Appellee filed its Reply on May 30, 2014 (J.A. 697-718). On May 30, 2014, Appellee filed a Motion to Strike affidavits (J.A. 743-756). On July 8, 2014 Appellant timely filed his Response to Motion to Strike affidavits (J.A. 757-766). On August 15, 2014 the district court issued an Order and Memorandum Opinion granting Summary Judgment in favor of Appellee and granting Appellee's Motion to Strike affidavits (J.A. 791-801). Clerk's Judgment was entered on the same day (J.A. 802). Appellant filed timely notice of his instant appeal on September 11, 2014 (J.A. 803).

## IV.   **Summary of Argument**

The district court erred in granting judgment as a matter of law with respect to Mr. Kinsers' claims.  As an initial matter, Appellant made Initial Discovery Disclosures served to Appellee on June 18, 2013 identifying UMAR employees or ex-employees as individuals likely to have discoverable information and knowledge of facts and issues raised in Mr. Kinser's Complaint that Mr. Kinser may use to support his claims or defenses, unless solely for impeachment, and who may have discoverable information regarding this lawsuit.  The district court failed to properly consider this Rule 26 disclosure, did not consider Appellee's nonresponsive written discovery responses concerning its own employees or ex-employees  when the Appellant became aware of new information set forth in his three (3) supporting affidavits, that Cindy Powell was an employee of UMAR from 2007 until 2014, when the affidavits were created and properly disclosed to Appellee pursuant to Rule 26.

The district court also failed, generally, to consider the facts in a light most favorable to the non-moving party (Appellant) concerning Mr. Kinser's claims under Title VII, ADEA and North Carolina law, particularly with respect to the timing of UMAR's alleged performance based issues first set forth and disclosed in its defense to Mr. Kinser's EEOC charge months after Mr. Kinser was terminated and which UMAR never presented or addressed with Mr. Kinser, Mr. Kinser's

5

twenty (20) plus year history of good performance reviews and absolutely no written warnings or reprimands although UMAR Company Procedure Guidelines required otherwise. As the record in this case shows, each step UMAR took with regard to its termination of Mr. Kinser's employment provides sufficient evidence for a jury to find UMAR discriminated and terminated Mr. Kinser based on his sex and age.

The district court also did not properly apply Rule 26 or Rule 37 regarding new information Appellant became aware of in May 2014 after Cindy Powell was terminated by UMAR in January 2014, UMAR's non responsive written discovery requests seeking the same information from the Appellee about its own employees or ex-employees and the application of the law to Appellant's affidavits as set forth below.

## V.    Argument

### A. Standard of Review

The standard of review of a grant of summary judgment is *de novo M&M Medical Supplies & Serv., Inc. v. Pleasant Valley Hospital, Inc.,* 981 F.2d 160, 163 (4th Cir.1992) (en banc). Summary Judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317,

323-25 (1986).  In reaching its determination, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence."  *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991)(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000)([T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.")

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 248.  In the present case, at a minimum, material disputed facts exist regarding Appellant's claims and, accordingly, summary judgment is inappropriate.

### B.    The District Court's Order Granting Appellee's Motion to Strike Affidavits was in Error.

### I.  CINDY POWELL'S  DISCLOSURE OF IDENTITY.

The Court should not strike the Affidavit of Cindy Powell.  The Appellant did disclose Ms. Powell in his Initial Disclosures by identifying the employees or

ex-employees of Appellee UMAR. Initial Discovery Disclosures of Appellant is attached as J.A. 767-769. Moreover, the Appellant timely supplemented his discovery responses under rule 26(e)(1) upon learning that Ms. Powell had discoverable information and would swear under oath an affidavit in May of 2014. Appellee failed to identify Ms. Powell in its written discovery responses when it would have been proper to do so on several occasions (see Appellee's Interrogatory Responses dated October 8, 2013, at J.A. 142-164).

The Court in *Rivot-Sanchez v. Warner Chilcott Co.,* 707 F. Supp.2d 234, 259 (D.P.R. 2010), held that on a motion to strike a sworn statement the defendant's challenge is misplaced [when] plaintiff produced the Rivot Statement after the discovery cutoff deadline of April 4, 2009 because it was not created until June 22, 2009. As the document did not exist during the discovery period, Rule 26 is inapposite. Plaintiff is required to produce documents in his possession; Rule 26(a) does not obligate him to create a new document. *See Florer v. Johnson-Bales,* 2010 WL 597170 (W.D.Wash. Feb. 17, 2010); *Walker v. THI of N.M. at Hobbs Ctr.,* 2010 WL 552661 (D.N.M. Feb. 8, 2010). And Rule 56 clearly states that a party may oppose a motion for summary judgment by submitting an affidavit. *See* Fed. R. Civ. Pro. 56(e) (2).

The court in *Rivot-Sanchez v. Warner Chillcott Co.* explained that even were Rule 26 applicable, I find the late filing of the Rivot Statement was harmless

8

under Rule 37(c)(1)….Moreover, defendant did not move to take additional discovery based on the late receipt of the Rivot Statement. Given these circumstances, I find that defendant suffered no prejudice due to the late disclosure. In sum, no sanction of exclusion is warranted on this ground.

*Sharpe v. Global Sec. Int'l,* 766 F. Supp. 2d 1272, 1278 (S.D. Ala., 2011) states the Federal Rules of Civil Procedure provide that if a party fails timely to identify a witness as required by Rule 26(a) or 26(e), "the party is not allowed to use that…witness to supply evidence on a motion …unless the failure was substantially justified or is harmless." Rule 37(c)(1); *see also Mee Industries v. Dow Chemical Co.,* 608 F.3d 1202, 1221 (11th Cir. 2010) ("Rule 37(c) of the Federal Rules of Civil Procedure provides for sanctions against a party that fails to disclose information required under Rule 26(a) or (e)."). In determining whether an undisclosed witness should be excluded under this Rule, courts typically consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party" of allowing the witness to testify. *Romero v. Drummond Co.,* 552 F. 3d 1303, 1321 (11th Cir. 2008); *see also Lips v. City of Hollywood,* 2009 WL 3048895, *11 (11th Cir. Sept. 25, 2009) (similar).

In *Sharpe v. Global Sec. Int'l,*766 F. Supp. 2d 1272, 1278 (S.D. Ala., 2011) the Court exercises its broad discretion by **overruling** defendant's nondisclosure

objection.  After careful consideration of the parties' filings, the undersigned finds that Sharpe has proffered good-faith explanations for failing to proffer these witnesses sooner.  Despite diligence on his part, Sharpe did not locate and contact these witnesses, much less learn that they possessed relevant information, until very late in the game and shortly before filing his response to the Motion for Summary Judgment.  There is no reason to believe that plaintiff was sandbagging defendant as to Chisenall, Kelly and Anderson by not disclosing them sooner, much less that plaintiff willfully "misled" defendant "regarding the scope and extent of plaintiffs evidence," as defendant accuses.  Moreover, given the limited, discrete, and largely ancillary nature of the testimony presented by these three witnesses in their declarations (and defendant's ability to contact and interview these witnesses, all of whom are its own former employees, whenever it desires), there is no reason to believe that consideration of these declarations will prejudice defendant in any material way.  In Rule 37(c) terms, the nondisclosure of these witnesses was both substantially justified and harmless.

The Appellant was in accordance with Rule 26 (a)(1)(A) but even under Rule 37 (c)(1) the Appellee would not be surprised about an ex-employee affidavit, the affidavit would not disrupt Ms. Powell's testimony at trial, Ms. Powell's sworn statement is important and the Appellant disclosed the evidence timely and pursuant to the Federal Rules of  Evidence.  The discoverable evidence was sworn

and signed by Ms. Powell on May 14, 2014 and two days later was filed with the Court and disclosed to the Appellee.

The *Rivot-Sanchez v. Warner Chilcott Co.,* 707 F. Supp. 2d 234, 259 court further stated it is an abuse of discretion for the court to disregard an affidavit pertaining to previously identified incidents that are merely described with more specificity in the affidavit. *Hernandez-Loring v. Univ. Metropolitana,* 233 F.3d 49, 55 (1st Cir.2000).

In the case which Appellee  cited in its Motion to Strike Memorandum, *Southern States Rack and Fixture, Incorporated v. Sherwin-Williams Company,* 318 f. 3d 592 (4th Cir. 2003), involves the exclusion of an expert witnesses' third expert opinion formulated on the day trial began and not disclosed to defense counsel until the third day of trial.

Just because the Appellee does not like what the sworn affidavits say or believes the affidavits create material issues of fact as to causes of action against it does not mean the Appellant did not properly supplement the May 14, 2014 affidavits. The Appellee has improperly withheld discovery in this case since its Initial Disclosures.   Appellee cannot now seek to strike properly submitted evidence created May 14, 2014 because it does not like what the evidence states.

## II.    THE AFFIDAVIT OF CHRISTOPHER POWELL IS NOT A SHAM AFFIDAVIT.

The Court should not strike the affidavit of Christopher Powell.  Mr. Powell last worked for the Appellee in March 2012, more than two years ago.  Mr. Powell's Noticed deposition was held January 9, 2014, almost two years after he last worked for the Appellee.  As Mr. Powell's deposition reveals, he had almost no idea what this lawsuit was about at the time of his deposition. Further, Mr. Powell's mother, Cindy Powell was still working for the Appellee at the time of Mr. Powell's deposition.  Mr. Powell's deposition reveals that Mr. Powell did not talk with his mother about the Appellee or the Appellee's working environment or the Appellee employees while Ms. Powell worked for the Appellee.  (J.A. 772, 773). Then all of a sudden on January the 9th, 2014 Mr. Powell is being asked hundreds of questions about people, places, activities and events that happened almost two years before.

When Mr. Powell signed his sworn affidavit on May 14, 2014 he certainly had the opportunity to have candid conversations with his mother who was no longer working for the Appellee concerning the Appellee, Appellee's employees and Appellee's working environment in which Mr. Powell was able to refresh and recollect more information as opposed to being subpoenaed and bombarded with questions from events that had occurred years before.  Common sense would certainly dictate that it would be difficult for an ex-employee to recall the names of

all co-workers from years before without having conversations with other co-workers and a meaningful opportunity to reflect and recall.

Further, with regard to hearsay and conclusory statement objections, the Court in *Sharpe v. Global Sec. Int'l,* at 1281, states [that a fellow employee/ex-employee] can testify about his personal observations and understandings concerning which employees performed what jobs and what their job titles were. Defendant's skepticism concerning the depth of Brown's familiarity with leadman job descriptions and the structural hierarchy of GSG may provide fertile ground for cross-examination, but it does not warrant wholesale exclusion of testimony which appears to be rationally based on the witness's perceptions. And Brown's testimony concerning what Woods told him appears not to be hearsay at all, but rather to be a "statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Rule 801 (d)(2), Fed. R. Evid. Also, to the extent defendant attempts to invoke the "sham affidavit" rule by pointing out purported inconsistencies between Brown's declaration and a statement he signed in 2009, that argument may call Brown's credibility into question, but it does not implicate admissibility concerns. *Akins v. Fulton County, Ga.,* 2008 WL 2130748, *3 (11th Cir. May 22, 2008 ("We apply the sham affidavit concept to limited circumstances, and thus, every discrepancy contained in an affidavit does not justify a district

court's refusal to give credence to such evidence."); *Allen v. Board of Public Educ. For Bibb County,* 495 F.3d 1306, 1316 (11th Cir. 2007) (sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case").

The Appellee's cited case *Jackson v. Consolidation Coal Co., McElroy Mine*, 21 f. 3d 422 (C.A.4(Va.), 1994) which has to do with a plaintiff employee who was deposed and failed to mention defendant employer threats against him but subsequently signed an affidavit alleging the defendant had threatened him.

Here, Mr. Powell's affidavit does not contradict his prior deposition but only clarifies his understanding of the facts (mostly peoples names which he had not heard for almost two years at the time of his deposition) as understandably set forth above and as he will testify to at the trial of this matter.

In Appellee's Motion to Strike Memorandum cited case, *Cleveland v. Polroy Management Systems Corp.,* 526 U.S. 795(1999) the Supreme Court addresses the discrepancy between a plaintiff who filed an ADA lawsuit the week before being awarded SSDI. Under SSDI the claimant must show disability so severe that she is unable to do her previous work or any other kind of substantial gainful work. Under ADA the claimant must show that although she is disabled, she can perform the essential functions of her job, including if she can only do so with reasonable accommodation. The Court determined for the two standards to co-exist the plaintiff must provide a sufficient explanation. The different claim

requirements in the *Cleveland* case appear to be in almost direct conflict between an SSDI claim and an ADA claim where a claimant would not be able to have "her cake and eat it to." Here, Mr. Powell's affidavit is clarifying the names of former co-workers he has not seen or spoken to for a few years or at least not since March 2012 and which the Appellee has at all times improperly withheld and continues to do so.

The issue which the Appellee has raised in Mr. Powell's affidavit concerning the Appellee employees who performed the Appellant's job duties and job functions after he was terminated is certainly an issue of fact as Ann Church's deposition claims that she was the only one (J.A. 477, 478), and in John Weatherford's deposition he says it was Christine Gibney (J.A. 596, Weatherford depo. page 26), and the Appellee's Written Interrogatory Response or Appellee's Initial Disclosures do not answer the question at all. (J.A.  148, 149, 774-778) (Appellee's Initial Disclosures attached as <u>EXHIBIT 3 t</u>o Doc. 40, J.A. 774-778).

In fact the Appellee's  Initial Disclosures dated June 18th , 2013 do not even identify John Weatherford who began working with the Appellee on  May 5, 2013 and who the Appellee later appointed to be the Appellee's 30(b)(6) officer (J.A. 587)  (Appellee's Initial Disclosure attached as Exhibit 3 TO Doc. 40, J.A. 774-778) (J.A. 587).

The Appellants' affidavits and the Appellee's completely inconsistent position based on its depositions, its affidavits and its discovery responses or lack of discovery responses clearly demonstrate issues of fact to be properly determined by the trier of fact after hearing all witnesses in the case.

## III.  THE COURT SHOULD NOT STRIKE THE PLAINTIFF'S AFFIDAVIT BECAUSE IT IS NOT A SHAM AFFIDAVIT.

Once again, the Appellee's argument in roman numeral III of its Motion to Strike Memorandum highlights the issues of fact as to the Appellee's employees who performed the Appellant's job duties and job functions after the Appellant was terminated based upon Appellee's completely inconsistent position as to who performed the simple and straight forward question of who did Appellant's work after he left.  In most cases, there is a simple and straight forward answer but not here.  The answer continues to be disputed even as between the Appellee officers' depositions (J.A. 477, 478, 596) and not answered or known by the Appellee in its discovery responses. (J.A. 142-164, 16) (Exhibit 3 to Doc. 40, J.A. 774-479). Appellant's affidavit is not contradictory to his deposition from the prior year and highlights the Appellee's attempted deception to confuse and not clarify normally routine issues of fact and cementing the requirement for a hearing in order to determine all issues of fact.

The district court Order (J.A. 791-801) did not identify any affidavit statements which it considered contradictions from Mr. Powell's deposition

months earlier and before Appellee terminated Mr. Powell's mother's employment lasting from 2007 until 2014.   The district court Order (J.A. 791-801) did not identify any affidavit statements which it considered contradictions from Appellant's deposition almost a year earlier and before Appellant was able to sit down with Mr. Powell and Cindy Powell (after she was terminated by Appellee) and discuss issues set forth in the Complaint and occurring at UMAR in 2012 and 2013 for several hours.

For the herein stated reasons, the district court erred in granting Appellee's Motion to Strike the Appellants' affidavits.

## IV.   RULE 56 ARGUMENT (not addressed in district court Order dated August 15, 2014)

### A. Facts Admissible In Evidence

The facts and issues of fact are properly admitted into the evidence.  Any alleged hearsay statements in the Appellant's affidavits are properly admitted into the evidence based on statements which are not hearsay and exceptions to the hearsay rule which the Appellee's Motion to Strike Memorandum has failed to mention or identify.  See Fed. Rule of Evidence 801(c), 801(d)(1), 801(d)(2), 802, 803(1).

With regard to the 5 bullet points the Appellee lists in its Motion to Strike Memorandum from Ms. Powell's affidavit on page 8 of its Memorandum, number 1,3,4 and 5 are not hearsay and are admissions by party-opponent and number 2 is

not offered for the truth of the matter asserted but the fact that it was just said questions Appellee's position that day, that the Appellant  allegedly  resigned and all the while the entire   Appellee's staff   knew it was absurd and not true or accurate  to say Appellant resigned.

On page 8 of the Appellee's Motion to Strike Memorandum the Appellee lists 4 bullet points from Mr. Powell's affidavit.  All 4 bullet points are admissions by party-opponent and the 2nd and 4th are not offered for the truth of the matter asserted.

For Appellant's affidavit, the 1st bullet point the Appellee's Motion to Strike Memorandum lists on page 9   is an admission by party-opponent.  When the Appellant went back to his regular job title of COO after being the interim President and CEO from July 2011 until October 2011 it is not even questioned or contested by the Appellee that his income and salary somehow reverted back or was lowered after Appellant's salary raise in 2011 (J.A. 376).

All the above referenced statements cited from the Appellee's Motion to Strike Memorandum are properly admitted as set forth above.

### B.    Foundation and/or Personal Knowledge

The Appellant's verified Complaint and the multiple deposition transcripts including attached documents to all briefs in this case have provided ample foundation and/or personal knowledge for the Appellant's affidavits which have in

a more concise manner set forth the issues of fact but are also set forth in the parties other supporting documents.

At the bottom of page 9 of the Appellee's Motion to Strike Memorandum, the 1st two bullet points are from Mr. Powell's affidavit and his deposition in January of 2014 laid an enormous amount of foundation, and admissions by party-opponents including the conversations and Appellee admissions Mr. Powell heard when listening to the leadership team members speak and their present sense impressions (J.A. 274-277).

The Appellee's 4 bullet points on page 10 of Appellee's Motion to Strike Memorandum all relate to Ms. Powell's affidavit. As stated in her affidavit, Ms. Powell's job for the Appellee was payroll and human resources assistant until January 23, 2014. She had direct knowledge of every hire, fire, discharge, write up, salary paid or raise given for every employee in the Appellee's organization. In her affidavit, Ms. Powell sets forth in detail the different job duties which different Appellee employees took over from the Appellant as would be normal information for a six and a half year payroll and human resources assistant to know. The affiants have not failed to indicate that their statements were within their personal knowledge. Based on Mr. Powell's deposition and Ms. Powell's stated position of payroll and human resources assistant for Appellee from 2007 until 2014 the

Appellant's affidavits have certainly laid the foundation and/or personal knowledge of their sworn affidavits.

## V.   THE COURT SHOULD NOT STRIKE ANY REFERENCE TO JOHN WEATHERFORD'S DWI  CHARGE (not addressed in district court Order dated August 15, 2014).

John Weatherford's DWI charge would certainly be relevant as to Appellee's standard of its employees meeting Appellee's legitimate expectations. Are these expectations uniformly-applied in light of Ann Church's male hiring spree after Appellee was aware of the Appellant's EEOC charge? Is the Appellee not wanting to discharge John Weatherford until after the resolution of this matter or if his employment status was changed is Appellee fearful that Mr. Weatherford would testify negatively against the Appellee?  Is Mr. Weatherford's job performance along with the pending criminal charge in line with Appellee's expectations or is a different standard being maintained and implemented in light of the EEOC charge and lawsuit since the summer of 2012?

 Mr. Weatherford's DWI charge is absolutely relevant and understanding any future conviction to be a potential misdemeanor charge, it should not be considered inflammatory.  If Mr. Weatherford is at sometime convicted for DWI and if he is unable to get a limited driving privilege, one could foresee that may become difficult  to perform his job without driving privileges.

For this evidence, the probative value is not outweighed by any allegation that this information of a potential future misdemeanor conviction is somehow inflammatory, prejudicial or presents a danger of unfair prejudice. As set forth herein, there are a multitude of factors and evidence which the Court should properly consider when determining whether the Appellee's stated reason for termination is a pretext for discrimination.

**C.    The District Court's Order Granting Summary Judgment with Respect to Appellant's Claims was in Error.**

**1.    There are Triable Facts Showing UMAR Violated Mr. Kinser's Rights under The Title VII, ADEA and North Carolina law.**

Mr. Kinser's claims of sex and age under Title VII and ADEA are both predicted on the same factual allegations.

Title VII prohibits discrimination "because of a protected characteristic, such as race or sex. Such discrimination is deemed "an unlawful employment practice":

      a.    Employer practices

      It shall be an unlawful employment practice for an employer-

      (1)    To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin(.)

42 U.S.C. § 2000e-2(a).

The 1991 Act added § 2000e-2(m), which provides that "an unlawful employment practice is established" when a protected characteristic is "a motivating factor" in an employment action:

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practices, even though other factors also motivated the practice. Civil Rights Act of 1965, Title VII, § 701, 42 U.S.C. § 2000e-2(m) (as amended by Civil Rights Act of 1991, Pub.L. No. 102-166, § 107(a), 105 Stat. 1071 (1991)). *Costa v. Desert Palace, Inc.,* 299 f.3d 838, 847 (9th Cir. 2002).

A sex discrimination claim can be proved through both direct and indirect methods. Both of which are presented here. Circumstantial evidence can be of three types. The first consists of such things as suspicious timing, ambiguous statements, or other bits and pieces from which an inference of discriminatory intent can be drawn. The second type is evidence that employees similarly situated to the plaintff (except for the relevant characteristic, i.e., gender) received better treatment than he. Third is evidence that the plaintiff was qualified for the job but was passed over in favor of a person (in this case a female), and the employer's stated reason for its action is unworthy of belief-a pretext for discrimination. *Farr v. St. Francis Hosp. and Health Centers,* 570 f.3d 829, 832 (7th Cir. 2009), citing

*Hossack v. Floor Covering Assocs. Of Joliet, Inc.,* 492 f.3d 853 (7th Cir. 2007);
*Troupe v. May Dep't Stores Co.,* 20F.3d 734 (7th Cir. 1994).

To prove his case by the indirect method,…[appellant] must meet the test set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 688 (1973)-or, because his is a reverse sex discrimination case, a modified test. Under *McDonnell Douglas,* to establish a prima facie case an appellee must show that he is a member of a protected class, that he was meeting his employer's legitimate expectations; that he suffered an adverse employment action, and that similarly situated individuals were treated more favorably than he was. In addition, when a plaintiff is a member of a "majority" –for instance, a male plaintiff alleging gender discrimination-we have said he must set out "background circumstances" that show that the employer discriminates against the majority, or he must show there is something "fishy" going on. *Farr v. St. Francis* citing *Phelan v. City of Chicago,* 347 f.3d 679, 684 (7th Cir. 2003) (quoting *Harding v. Gray,* 9 f.3d 150, 153 (D.C. Cir. 1993)); see also *Gore v. Indiana Univ.,* 416 f.3d 590, 592 (7th Cir. 2005). Once a prima facie case is established, the employer must provide a nondiscriminatory reason for the employment action; if it does, the appellee then must show that the reason is pretextual.

In this case, the Appellant had always met and exceeded the Appellee's legitimate expectations during his entire career with Appellee since May 1991. (J.A. 473, 8, 829, 679).

The Appellee has an Administrative Policy & Procedure for employee separations and the Appellant was never given a written warning or notice (J.A. 689, 484-485, 487, 570, 445-446).

In July of 2011, less than nine months prior to Appellant's termination, he was promoted to Interim President and given a $7000.00 raise. (J.A. 471, 8, 829).

When the Appellant returned to his position as COO in October, the Appellee was glad and pleased that the Appellant wanted to continue his work in operations. (J.A. 384-389).

The Appellee's brief in Support of its Motion for Summary Judgment spends a majority of its content listing alleged performance based issues of the Appellant which the Appellee never addressed with the Appellant and which the Appellant first became aware of in the Appellee's response to the EEOC in the summer of 2012, months after the Appellant's termination date of March 7, 2012 (445-447, 829, 260, 256).

The burden of showing something by a "preponderance of the evidence," the most common standard in the civil law, "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before (it) may

24

find in favor of the party who has the burden to persuade the (jury) of the fact's existence."',*Costa v. Desert Palace, Inc.,* 299 f.3d 838, 848 (9th Cir. 2002) citing *Concrete Pipe & Prods. Of Cal. v. Constr. Laborers Pension Trust for S. Cal,* 508 U.S. 602, 622, 113 S. Ct 2264, 124 L.Ed 2d 539 (1993) (quoting *in re Winship,* 397 U.S. 358, 371-72, 90 S. Ct. 1068, 25 L.Ed 2d 368 (1970) (Harlan, J., concurring) (citation omitted). The inquiry is simply that of any civil case: whether the plaintiff's evidence is sufficient for a rational factfinder to conclude by a preponderance of the evidence that the employer violated the statute-that "race, color, religion, sex or national origin was a motivating factor for any employment practice."

In this case, all members of the leadership team and the entire Corporate staff were females when the Appellant was terminated. (J.A. 500-501, 256, 275-276, 335, 357-358, 366, 371). Ann Church had just hired another female who was on the leadership team, Elaine Durrman and never hired any male employees until after the Appellee filed his EEOC charge April 11, 2012 and the Appellee had knowledge of his EEOC charge. (J.A. 492-495, 521, 527, 260). Apparently after the Appellee was aware of the Appellant's EEOC charge and before Ann Church's forced resignation in October 2013, Ann Church hired seven (7) male employees but none prior to the summer of 2012  (J.A. 809, 492-495, 521, 527, 260). Ann Church states in her deposition that she was the only one responsible for

Appellant's termination but later in her deposition she states that the decision to terminate the Appellant was finalized by the board. (J.A. 692, 595-598).

After March 7, 2012 the UMAR employees who performed the job duties and job functions which the Appellant used to perform include but are not limited to Ann Church, Beth Bradley (20's), and Aline Ferrari (20's). (J.A. 477-478, 256-259, 260-262, 447). Christine Gibney was hired in September 2012 and also performed some of the job duties and job functions which the Appellant used to perform. (J.A. 692, 595-598). Both Ann Church and John Weatherford failed to identify Beth Bradley or Aline Ferrari as performing the Appellant's job duties or functions and both stated that his position was eliminated or that the Appellant was not replaced which is not accurate. (J.A. 595, 489, 839-840 ).

In January of 2012, another female member of the leadership team, Teran Morrow wrote an email to Ann Church cussing and making a physical threat against the Appellant (J.A. 836-838). Apparently she was meeting and continues to meet the Appellee's legitimate expectations to be employed on the leadership team.

In the Summer of 2011, when the Appellant was promoted to Interim President of UMAR and given a $7000.00 raise, another female member of the leadership team who wanted the position, Marilyn Garner, was passed over for the position. (Chris Powell Aff. J.A. 256-259; Cindy Powell Aff., J.A. 260-262). In

26

November 2013 John Weatherford, Director of Human Resources and Interim Clinical Director, who was hired in the Spring of 2013 was arrested and charged with a DWI. (Weatherford depo. J.A. 575; Church depo. J.A. 494; Exh. 15, 694-696). As of the Spring of 2014, John Weatherford continues to be the UMAR Director of H.R. (Cindy Powell Aff. J.A. 260-262). In December 2013 Marilyn Garner made John Weatherford be the 30(b)(6) company representative for its deposition, the deposition of Christopher Powell and the Court ordered mediation on March 14, 2014. (Cindy Powell Aff. J.A. 260-262; Weatherford depo. J.A. 575-678). Apparently John Weatherford was meeting and continues to meet the Appellee's legitimate expectations to be employed in management.

In the fall of 2013 two (2) female members of the Appellee's leadership team, Marilyn Garner and Teran Morrow attempted to make John Weatherford redo the payroll and human resources assistant's job description by adding a lot more duties to make it impossible for her performance to meet the standard and then wanted John Weatherford to start writing her up before they fired her for cause, but John Weatherford would not agree. (Cindy Powell Aff. J.A. 260-262). In such a scenario, the employer would attempt to have the Employment Security Commission deny the ex-employee's unemployment benefits based on misconduct or substantial fault. All the while, Ann Church was present and witnessed this

illegal and wrongful employment behavior from her fellow female leadership team members (Cindy Powell Aff., J.A. 260-262).

If the plaintiff establishes her prima facia case, the burden shifts to the employer at the second step "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* At the third step the burden returns to the plaintiff to show that "the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* Specifically, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the (employer) were not its true reasons, but were a pretext for discrimination." *Lettieri v. Equant Inc.,* No. 05-1532 (4th Cir. 2007) citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). At this last step "the burden to demonstrate pretext 'merges with the ultimate burden of persuading the court that (the appellee) has been the victim of intentional discrimination.'" *Hill,* 354 f.3d at 285 (quoting *Burdine,* 450 U.S. at 256).

Here the Appellant has introduced ample evidence showing that the Appellee's explanation for the discharge, his job performance was "unworthy of credence." Shortly after the Appellant's termination, another male employee of Appellee who was not in upper management, resigned based on the Appellee's treatment towards the male employees and knew that he was being targeted

28

because he was a male and all his superiors were female. (Chris Powell Aff. J.A. 275-276; Chris Powell depo. J.A. 275-276, 335, 357, 358, 366). Mr. Powell knew the Appellee's stated reasons for Appellant's termination were not true and that the reason for Appellant's employment termination was because he was a male. (Chris Powell Aff. J.A. 256-259; Chris Powell depo. J.A. 272, 288-293, 309, 327).

During the same period of time, the information concerning Appellant's termination which the leadership team stated to the Appellee's staff was different than what Mr. Powell heard the female leadership members say among themselves. (Chris Powell Aff. J.A. 256-259; Chris Powell depo. J.A. 297-303, 309, 327). Further Mrs. Powell and the rest of the staff knew the female leadership team was not being honest to them about Appellant's resignation and knew it was not true that Appellant resigned. (Cindy Powell Aff. J.A. 260-262; Chris Powell depo. J.A. 309-312).

All the staff knew how dedicated the Appellant was to his staff and residents and that the Appellant was an excellent COO in excess of twenty (20) years. (Cindy Powell Aff. J.A. 260-262; Chris Powell Aff. J.A. 256-259; Exh. 8 J.A. 679-688).

A plaintiff does not need a "smoking gun' to prove invidious intent, and few plaintiffs will have one. Rather, "(c)ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."

*Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 299 (4th Cir. 2010) citing *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100, 123 S. Ct 2148, 156 L. Ed. 2d 84 (2003) (citation and internal quotations omitted). This is not to say that thin cases should go to trial. "(T)he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) (emphasis in original). Rather, factual disputes must be both material and genuine, and district courts must ensure both conditions are satisfied before sending a case to trial. *Id.* at 248, 106 S. Ct. 2505; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

The ADEA makes it "unlawful for an employer…to discharge an individual… because of such individual's age." "29 U.S.C. § 623(a)(1). A plaintiff can establish a violation of the ADEA by putting forward circumstantial evidence of discrimination in accordance with the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973) and its progeny.

The burden-shifting scheme of proof established in *McDonnell Douglas* requires an employee to first establish a *prima facie* case of discrimination by a preponderance of the evidence. In order to establish a *prima facie* case of unlawful age discrimination, a plaintiff must show that (1) he is a member of the protected

class; (2) his employer took an adverse employment action against him; (3)he was performing his job to the legitimate expectations of his employer; and (4) he was replaced by a substantially younger employee. *Fox v. Alexander  Cnty.* 1 p. 10 (W.D.N.C. 2010) citing *Dugan v. Albermarle County School Board,* 293 f.3d 716, 720-21 (4th Cir. 2002); If plaintiff is able to make a sufficient showing on these elements, the burden then shifts to the government to articulate a legitimate, non-discriminatory reason for the adverse action.   The burden then shifts to the plaintiff, who must show by a preponderance of the evidence that the defendant's proffered reason is pretextual. *Evans v. Tech Applications & Serv. Co.,* 80 F.3d 957, 959 (4th Cir. 1996).

In *Fox v. Alexander Cnty.* (W.D.N.C., 2010) they noted that noticeably missing from Alexander County's argument, however, is any previous documentation or written warnings given before the Winter Haven call that would alert Fox to the fact that he was not meeting the expectations of his employer. *See e.g., Warch,* 435 F.3d at 515 (holding plaintiff failed to make a prima facie case where "OCIC reprimanded Warch based on concrete, specific observations and accompanied its reprimands  with explicit instructions on how to improve."); *Riddick v. Maic, Inc.* In analyzing whether Fox has met his burden of establishing a *prima facie* case, this court finds the present case strikingly similar to the situation presented in *Huang v. Gutierrez,* a NO8-2882, 1010 WL 93274 at *6 (D.Md. Jan.

31

5, 2010)(unreported), where the court found that the plaintiff established a prima facie case under the *McDonnell Douglass* framework. Important to the court in *Huang* was the absence of any allegation that the terminated employee, a doctor, committed any egregious violations of the employer's expectations. Id. At *7. The court also found that two warnings and one faulty performance allegation failed to overcome plaintiff's strong rebuttal evidence, which included the employer's admission that other employees were not terminated for similar deficiencies. Id. Similar to *Huang,* the reasons stated for Fox's demotion do not rise to the level of an egregious violation. Also similar to *Huang,* is the absence of prior warnings and inadequate performance evaluations alerting plaintiff to the fact that he was failing to meet his employer's expectations.

Here, just as in the *Fox* case and the *Huang* case, there is no documentation or written warnings given that would alert the Appellant that he allegedly was not meeting the expectations of his employer. (Church depo. J.A. 484-485; Church Aff. J.A. 804-810). Further, the three (3) emails from Ann Church to Appellant attached to her Affidavit do not address any negative performance based issues or warnings or reprimands but is along the lines of day to day work operations and communications between the Appellee's management. (Church Aff. J.A. 804-810; Kinser Aff. J.A. 829-835). Because of the total void of any performance based communication, other than Appellant's last Performance Appraisal dated July 1,

2011 which was rated as Performance Exceeded Expectations it is not surprising the Appellant and other staff members were completely shocked and taken off guard by the sudden termination. (Exh. 8 J.A. 679-688; Kinser dep. J.A. 409-419).

A court may consider comments that provide circumstantial evidence of discriminatory animus, in combination with other evidence. *See Brinkley v. Harbor Recreation Club,* 180 F.3d 598, 608 (4th Cir. 1999); *see also Straughn v. Delta Air Lines, Inc.,* 260 F.3d 23, 36 (1st Cir. 2001) (noting that the probativeness of comments made by an employer are lessened if not made by the employer making the decision or are remote in time); *Warren v. Fort Lincoln Cemetery, Inc.,* No. 00-419, 2001 WL 743199, *3 (D. Md. June 26, 2011) (holding though employer's racial slurs were not direct evidence of discriminatory intent, the employer's "conduct may still support plaintiff's case as circumstantial evidence of discriminatory animus" by employer). On the issue of pretext, the Court in *Fox v. Alexander Cnty.* stated that with regard to a demotion letter, a jury could interpret the statement to mean that the reasons for the demotion stated in the letter were not the real reasons for Fox's demotion. Likewise, a reasonable juror, upon hearing such evidence, could conclude that the reasons stated in the letter were merely pretextual. Such evidence provides strong support for Fox's claim of pretext because it was made close in time to the employment decision and made by a party that was primarily responsible for the decision to demote Fox. *See e.g., Evans v.*

*City of Houston,* (T)he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment.").

Here Ann Church sends an email to the Appellee's staff stating that the Appellant resigned, a completely fabricated story concocted along with her fellow female leadership team members (J.A. 839-840). All the while, repeating the story to the Appellee's staff and in a separate Appellee document dated March 7, 2012 stated different reasons for the Appellant's termination (J.A. 841; Chris Powell Aff. J.A. 256-259; Cindy Powell Aff. J.A. 260-262).

The Appellee cannot claim that the Appellant was not meeting its legitimate performance expectations as even the "Notes from termination of Bob Kinser" are void of any negative performance issues and in fact give praise to the Appellant "for his dedication and service to the residents and stated that this decision did not reflect on Mr. Kinser's role in building UMAR to what it is today." (J.A. 841). Even when the Appellant asked what the reason was, the only response repeated multiple times was "that she [Ann Church] was building her team and did not see him as part of it." (J.A. 841). Based on the verified Complaint, affidavits and discovery documents a jury could certainly determine that Ann Church was building her female team and did not see a male as part of it.

Immediately after Appellant's termination, younger females began performing the job duties and job functions which the Appellant had previously

performed (Chris Powell Aff. J.A. 256-259; Cindy Powell Aff. J.A. 260-262). Further the Appellee has not been truthful or uniform in answering the simple question of who performs the job duties and job functions that the Appellant used to perform. Ann Church says one thing in her deposition and John Weatherford says another in his 30(b)(6) deposition all the while failing to identify the young females identified in the Chris Powell and Cindy Powell affidavits.

An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can serve as evidence of discriminatory animus. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283, 96 S. Ct. 2574, 49 L.E.2d 493 (1976). As stated above, the same disparate treatment of employees has occurred here. The Teran Morrow threat, the lack of male hires before Appellant's EEOC charges, the string of male hires after the Appellant's EEOC charge in the summer of 2012, the John Weatherford November 2013 DWI arrest and charge and still being assigned Appellee's 30(b)(6) representative by Marilyn Garner when John Weatherford was hired by the Appellee in May 2013 after the Appellant was terminated and still works for the Appellee after his breathalyzer registered a .17 and driving his car against the police officer's orders. (Church Aff. J.A. 804-810; Cindy Powell Aff. J.A. 260-262; J.A. 694-696).

In *Fox, ...* reasonable juror examining the last eight years of disciplinary records for Alexander County EMS could further infer discriminatory animus on

35

the part of Alexander County EMS.  Just as in the *Fox* case, here a reasonable juror examining the last twenty (20) years of disciplinary records for the Appellee could further infer discriminatory animus on the part of Appellee.  Here the Appellant has no disciplinary record period.    Here, the Appellee is administering its expectations in a discriminatory fashion based on Appellant's sex and age.

The Fourth Circuit also recognized that age need not serve as the "sole" cause of an adverse action to meet this standard.  *See Kozlowski v. Hampton Sch. Bd.,* 77 Fed. Appx. 133, 145. 'It is clear that the law requires only that age be a causative or determinative factor in the decision, not the sole reason.' *Equal Employment Opportunity Comm'n  v. City of Greensboro* p. 22 (M.D.N.C. 2010) (quoting *Smith v. University of N.C.,* 632 F.2d 316, 337 (4th Cir. 1980).  As at least two courts have explained, *Gross* did not alter this well-established principle that age can constitute a "but-for" cause for an adverse action, even if it does not represent the "sole" cause.  *See Jones v. Oklahoma City Pub. Sch.,* 617 F.3d 1273, 1277-78 (10th Cir. 2010).  (A)n employer may be held liable under the  ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference. ("(W)hen a company changes its story after it cannot support its initial story, there is an obvious issue of pretext."): *Burns*, 96 F.3d at 732-33.

In this case, Ann Church and Teran Morrow have been documented as using the term "old UMAR" to the point where the Appellant stated his objection to the term and as "stepping on [his] toes" because of his lengthy tenure with the Appellee. (Kinser depo. J.A. 440-443). Further, as stated above the Appellee has not been forthright or consistent about the age or sex of the employees who performed the Appellant's job duties and job functions after Appellant was terminated, completely failing to identify the two (2) female employees in their 20's who were performing some of the job duties and job function which the Plaintiff used to perform. (Church Aff. J.A. 806-810; Church depo. J.A. 471-574; Weatherford depo.J.A. 575-678; Chris Powell Aff. J.A. 256-259; Cindy Powell Aff. J.A.260-262). Coupled with and in combination with the other evidence, a jury could certainly conclude that the Appellee's falsely stated reason, including different reasons in different documents stated above were merely pretextual for age and sex discrimination.

A court, in analyzing an employee's performance in relation to the reasonable expectations, focuses on the employee's performance at the time the employment action occurred; thus, summary judgment for the employer is appropriate where poor job performance at the time of employment action is only contradicted by evidence the employee performed well in the past. *Holtz v. Jefferson Smurfit Corp.,* 408 F. Supp. 2d 193, 204 (M.D.N.C. 2006) *See Peele v.*

*Country Mut. Ins. Co.,* 288 F. 3d 319, 328-29 (7th Cir. 2002).   In *Peele*, the employer repeatedly warned the employee about work deficiencies occurring over an eighteen-month period prior to the employment action.   *Id.* at 328.   The employee had otherwise received raises and favorable reviews for the eight-year period she worked. *Id.* at 329.

The Seventh Circuit held that summary judgment was appropriate because the evidence of poor performance was only contradicted by evidence that the employee performed well in the  past.   *See id.* In this case, there is absolutely no poor job performance at the time of the termination or any work deficiencies before the termination as stated above.  The Appellant's last Performance Review dated 7-11-11 was Performance Exceeded Expectations (J.A. 679-688).   The Appellee simply cannot create a list of alleged employee performance based issues which the Appellant had never seen at a later date and in defense of an EEOC charge in order to circumvent federal discrimination statute.

The burden a plaintiff bears in meeting a prima facie case "is not onerous." *Murry v. Jacobs Tech., Inc.,* p. 23 (M.D.N.C. 2012) citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S.  248, 253 (1981).  Accordingly, the Fourth Circuit has cautioned against the "danger" that courts might apply the "legitimate expectations" element of the prima facie case "too strictly.'  *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 516-17 (4th cir. 2006).  The "flexibility" of the *McDonnell*

*Douglas* framework contemplates that a plaintiff may meet his burden on summary judgment by evidence that creates a question of fact whether the "proffered 'expectation' is not, in fact, legitimate at all."  Id.; *see also Inman v. Klockner Pentaplast of America, Inc.,* 347 F. App'x 955, 960 (4th Cir. 2009) (reversing grant of summary judgment because plaintiff presented sufficient evidence where jury could conclude that deficiencies claimed by defendant "were exaggerated to cover up the (improper) motivation. . . . . and that any such deficiencies were not sufficient to prevent his performance from being adequate").

In this case there were no documented deficiencies and in fact deficiencies were created by the Appellee at the EEOC administrative level. (Church Aff. J.A. 806-810; Church depo. J.A. 471-574; Kinser Aff. J.A. 829-835). Before Appellant's termination he had no deficiencies to show his performance from being anything other than exceeding Appellee's expectations as documented above. See *Reed v. Buckeye Fire Equip.,* 241 F. App'x  917, 927 (4th Cir. 2007) (finding that there was a triable issue of fact where there was no documentation of the alleged problems with plaintiff's performance or work habits).  Cf. *Warch,*  435 F.3d at 517 (plaintiff had not produced sufficient evidence where he had admitted that his performance was lacking, and his supervisors had reprimanded him repeatedly, based on "concrete, specific observations").

In *Murry v. Jacobs Tech.,Inc* .(M.D.N.C. 2012) testimony from Mr. Murry's peers and Jacobs supervisors reflecting favorably upon his performance calls into question whether Mr. Davis's, and therefore AT&T's, proffered expectations for Mr. Murry were legitimate.  Viewing the facts in the light most favorable to Mr. Murry, there is a question of fact regarding whether Mr. Murry was meeting AT&T's *legitimate* expectations.  Mr. Murry has provided evidence that, prior to his termination, no one at AT&T had alerted Jacobs, or Mr. Murry himself, that his performance was deficient.  In sum, a reasonable juror could find that AT&T's proffered expectations were not legitimate, and there is a genuine dispute of material fact regarding the third element of Mr. Murry's prima facie case.

Although a plaintiff generally must demonstrate that he was replaced by someone outside the protected class, in limited circumstances, other evidence that leads to an inference of unlawful discrimination may be shown to satisfy the fourth element in the prima facie case.  *Sears Roebuck & Co.,* 243 F.3d at 851 n.2. In fact, the Fourth Circuit has explicitly held that where the "firing and replacement hiring decisions were made by different decisionmakers, the plaintiff can make out a prima facie case without showing replacement by someone outside the protected class."  *Miles v. Dell, Inc.,* 429 F.3d 480, 485 (4th Cir. 2005).  When one individual takes adverse action against a plaintiff, but another makes the replacement hiring decision, "the second individual's hiring decision has no probative value

whatsoever as to whether the first individual's firing decision was motivated by the plaintiff's protected status." Id. at 489.

The fact that an employer has offered different justifications at different times may be probative of pretext. *See Sears Roebuck & Co.,* 243 F.3d at 853 (quoting *Tyler v. Re/Max Mountain States, Inc.,* 232 F.3d 808, 813 (10th Cir. 2000) (stating that a court may be "disquieted. . . . .by an employer who 'fully' articulates its reasons for the first time after the decision was made")). *See Reeves,* 530 U.S. at 148 ("A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier to conclude that the employer unlawfully discriminated.")

**VI.** **Conclusion**

Appellant respectfully requests that this Honorable Court vacate the district court's grant of summary judgment against him and vacate the district court's grant of striking his affidavits.

Respectfully submitted,

Combs Law, PLLC


s/ Todd J. Combs_____

Todd J. Combs
Attorney for Appellant, Bobby J. Kinser
NC Bar No. 23381
108 Gateway Blvd. Suite 206
Mooresville, NC 28117
Tel: 704-799-2662

Fax: 888-254-0111
Email: todd@combslaw.org

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 9,520 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief has been prepared in a proportionally spaced font, Times New Roman  14 Point, Microsoft Word.

This is the 5th day of November, 2014.

s/ Todd J. Combs_____

Todd J. Combs
Attorney for Appellant, Bobby J. Kinser
NC  Bar No. 23381
108 Gateway Blvd. Suite 206
Mooresville, NC 28117
Tel: 704-799-2662
Fax: 888-254-0111
Email: todd@combslaw.org

**Certificate of Service**

I hereby certify that the required copies of the copies of the foregoing Opening Brief of Appellant were filed with the Clerk, United States Court of Appeals via hand delivery and electronically using the Court's CM/ECF system, which sends notification of such filing to the following:

COUNSEL SERVED ECF:

John D. Cole
Nexsen Pruet, PLLC
227 W. Trade Street, Suite 1550
Charlotte, NC 28202
jcole@nexsenpruet.com

Jonathan E. Schulz
Nexsen Pruet, PLLC
227 W. Trade Street, Suite 1550
Charlotte, NC 28202
jschultz@nexsenpruet.com

*Counsel for Appellee*

This is the 5th day of November, 2014

/s/  May Serafim
May Serafim
Lantagne Legal Printing
801 East Main Street, Suite 100
Richmond, Virginia 23219
804-644-0477